UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CLINTON T.  MATHEWS, | * | CIVIL ACTION NO. |
| | * | |
| VERSUS | * | |
| | * | SECTION |
| | * | |
| Sheriff Rodney J. Strain, Jr., individually | * | |
| and in his capacity as Sheriff of | * | |
| St. Tammany Parish; Captain Barney | * | |
| Tyrney; Captain Richard Magee; and | * | |
| Major Joseph Jarrell | * | MAGISTRATE |
| | * | |
| *    *    *    *    *    *    | * | |

## COMPLAINT AND JURY DEMAND

NOW INTO COURT, through undersigned counsel, comes plaintiff, Clinton T. Mathews ("Mr. Mathews"), with his complaint against Sheriff Rodney J. Strain, Jr., individually and in his capacity as Sheriff of St. Tammany Parish, Captain Barney Tyrney, Captain Richard Magee and Major Joseph Jarrell, stating that the following causes of action are based upon the Defendants' violations of the First Amendment to the Constitution of the United States of America under 42 U.S.C. § 1983; The Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et. seq*. ("FMLA") and the Louisiana Whistleblower Statute, LA. REV. STAT. ANN. 23:967 and the laws of  Louisiana, as follows:

## I. PARTIES

1.

Plaintiff, Mr. Mathews, a domiciliary of the State of Mississippi and of the United States was at all relevant times an employee within the meaning of the applicable statutes.

2.

Defendant, Sheriff Rodney J. Strain, Jr., also known as Sheriff Jack Strain is, upon information and belief, Sheriff of St. Tammany Parish, State of Louisiana, and a resident of St. Tammany Parish, State of Louisiana.

3.

Defendant, the Sheriff of St. Tammany Parish, was at all pertinent times Mr. Mathews' employer within the meaning of the applicable statutes.  The Sheriff of St. Tammany Parish also employed 50 or more employees at all pertinent times.

4.

Defendant, Captain Barney Tyrney, is, upon information and belief, an agent of the St. Tammany Parish Sheriff and a resident of St. Tammany Parish, State of Louisiana.

5.

Defendant, Captain Richard Magee, is, upon information and belief, an agent of the St. Tammany Parish Sheriff and a resident of St. Tammany Parish, State of Louisiana.

6.

Defendant, Major Joseph Jarrell, is, upon information and belief, an agent of the St. Tammany Parish Sheriff and a resident of St. Tammany Parish, State of Louisiana.


**II. JURISDICTION AND VENUE**

7.

Mr. Mathews asserts that jurisdiction is proper in this Honorable Court pursuant to federal question jurisdiction, 28 U.S.C. § 1331.

8.

Mr. Mathews asserts that the amount in controversy exceeds $75,000 and that jurisdiction is also proper in this Honorable Court pursuant to diversity jurisdiction, 28 U.S.C. § 1332.

9.

Mr. Mathews asserts that his state law claim is properly within this Court's supplemental jurisdiction in accordance with 28 U.S.C. § 1367.

10.

Venue is proper in this district pursuant to 28 U.S.C. §1391(a), as all of the material facts alleged herein occurred within the confines of the Eastern District of Louisiana.

## VICARIOUS LIABILITY – RESPONDEAT SUPERIOR

11.

Whenever in this Complaint it is alleged that a Defendant did any act or thing, it is meant that the Defendant's supervisors, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's supervisors, agents, servants, employees, or representatives.

12.

The acts of the St. Tammany Parish Sheriff's Office ("STPSO") superior officers, including but not limited to Captain Barney Tyrney, Captain Richard Magee, and Major Joe Jarrell were performed while in the employment of Defendants, to further Defendants' business/political entity, to accomplish the objective for which these supervisory employees were hired, and within the course and scope of that employment or within the authority delegated to

these employees.  Defendants Tyrney, Magee and Jarrell were given supervisory authority over Mr. Mathews.  As such, Defendants Tyrney, Magee and Jarrell were given complete day-to-day control over the work conditions, duties, and all other aspects of Mr. Mathews' employment.

## CIVIL CONSPIRACY

### 13.

Defendants were aware of and had actual knowledge of each other's actions as alleged herein colluding to violate Mr. Mathews' rights.  Defendants' acts as alleged herein thus constitute civil conspiracy in violation of Louisiana Civil Code Article 2324(A) such that, to the extent that Defendants are liable to Mr. Mathews, they are liable *in solido*.

## LA. R.S. 42:1169 FREEDOM FROM REPRISAL FOR DISCLOSURE OF IMPROPER ACTS

### 14.

Defendants' actions alleged herein constitute a violation of Louisiana Revised Statute 42:1169 – Freedom from Reprisal for Disclosure of Improper Acts.  Accordingly, Plaintiff intends to make a report and submit a copy of this Complaint to the Louisiana Board of Ethics located at Louisiana Ethics Administration Program, P.O. Box 4368, Baton Rouge, Louisiana 70821.

## SUMMARY OF THE CASE

### 15.

Plaintiff Clint Mathews spent seventeen years successfully progressing through the ranks of the St. Tammany Parish Sheriff's Office.  He rose to the rank of Lieutenant in the Narcotics

Section – one of the highest paid positions in the STPSO.  Mr. Mathews served on the STSPO promotions board twice, was highly decorated including over a dozen commendations, and, at one point, won the prestigious Officer of the Year Award.  Prior to the incidents stated herein, Mr. Mathews received no infractions.  He was never written up, verbally counseled, suspended or otherwise disciplined for misconduct during his seventeen years of STPSO service.

16.

In March 2011, Mr. Mathews took a principled stand when his superior asked him to influence the employees under his command to purchase tickets to the Sheriff Strain's 2011 Campaign Gala ("Campaign Gala") and purchase one for himself as well.  Mr. Mathews knew that the request violated the law and his rights.  Mr. Mathews reported the request to several superiors within the STPSO, but no corrective action was taken.  Rather, Mr. Mathews was subsequently demoted, transferred and retaliated against for his position regarding the Campaign Gala.

17.

Mr. Mathews took authorized FMLA leave after he was transferred.  His leave was specifically mentioned as the reason for his first ever negative performance appraisal, which he received on December 10, 2011 and which further manifested the pattern of retaliation and reprisal against Mr. Mathews by STPSO continuing until his discharge from the department on October 30, 2012.

## STATEMENT OF FACTS

18.

Mr. Mathews began working for Defendant – St. Tammany Parish Sheriff – in 1994.

19.

Mr. Mathews worked as Lieutenant in the Narcotics Section of the Operations Division from 2008 until his demotion and transfer to the Patrol Division in June 2011.

20.

Prior to the incidents at issue in this Complaint, Mr. Mathews had never been disciplined for any misconduct during his seventeen years of service.  In fact, Mr. Mathews was highly decorated throughout his service, winning the prestigious officer of the year award at one point.

21.

Mr. Mathews served two separate terms on the STPSO's Promotion Board.  His position as Narcotics Section Lieutenant was one of the highest paid positions in the department due to the amount of overtime necessary.

22.

Defendant Tyrney was transferred to the Narcotics Section of the Operations Division in January 2011.

23.

In late March 2011, Defendant Tyrney informed Mr. Mathews that he had several tickets to Sheriff Strain's Campaign Gala that Defendant Tyrney needed to sell.  Mr. Mathews responded that he was not interested.  Defendant Tyrney further informed Mr. Mathews that he was upset that nobody had approached him to purchase tickets.

24.

Defendant Tyrney then informed Mr. Mathews that he expected him, as well as Mr. Mathews' subordinates, to purchase tickets or otherwise make a financial contribution to Sheriff Strain's upcoming $250 per plate Campaign Gala.

25.

Mr. Mathews told Defendant Tyrney that he did not yet know whom he supported politically and that he considered his election choice private information.

26.

Upon Mr. Mathews' refusal to purchase tickets, Defendant Tyrney explained that $250 was a small price for the Narcotics officers to pay since they received so much overtime.  Mr. Mathews again objected to Defendant Tyrney's strong arm tactics telling him that he did not think whom he or his officers voted for was any of Defendant Tyrney's business.   Still, Defendant Tyrney persisted in asking Mr. Mathews if he wanted Defendant Tyrney to take away all of their overtime and for them to work a flat 80 hour pay period like all else in the STPSO.

27.

The following week, Defendant Tyrney summoned Mr. Mathews, Sergeant Steven Gaudet and Sergeant John Morse to his office where Defendant Tyrney again voiced his anger that only one or two officers under Defendant Tyrney's command had purchased the $250 per plate tickets to Sheriff Strain's Campaign Gala.  Defendant Tyrney again threatened to take away the Narcotics officers' overtime and its resulting pay.

28.

Soon the entire Narcotics Section was aware that they were expected to purchase Campaign Gala tickets.  Many felt that their prospects for advancement in the STPSO depended on purchasing tickets.   Several detectives approached Mr. Mathews with concerns that they could not afford the tickets.  Mr. Mathews told the Narcotics officers that it was up to them whether they should purchase Campaign Gala tickets or not.

29.

During Mr. Mathews' tenure at the STPSO, he had been asked to contribute to campaigns and pressured to vote at elections with suggestions that the poll attendance was monitored by the department.  However, up until this point in his career, he had never been coerced with the threat of reprisal such as was perpetrated by Defendant Tyrney.

30.

Defendant Tyrney's threats soon began to weigh on Mr. Mathews' mind as the Campaign Gala approached.

31.

Ultimately, Mr. Mathews succumbed to Defendant Tyrney's threats of reprisal against Mr. Mathews' subordinates.  He wanted to protect his job and pay level as well as his section's members.  Even though Mr. Mathews would be out of town during Sheriff Strain's Campaign Gala and unable to use the ticket, he agreed to purchase a Campaign Gala ticket if Defendant Tyrney would leave the Narcotics Section officers alone.

32.

Defendant Tyrney directed Mr. Mathews to write a $250 check made out to Tyrney personally. [*See* Check attached hereto as Exhibit 1].  He subsequently deposited Mr. Mathews' $250 Campaign Gala check into his personal account.  Defendant Tyrney told Mr. Mathews that Mrs. Tyrney would use Mr. Mathews' ticket since he was unable to attend.

33.

Approximately one month after Sheriff Strain's Campaign Gala, a friend approached Mr. Mathews and asked him about his pending transfer out of the Narcotics Section.  Mr. Mathews

was shocked since he did not request to be transferred, did not want to be transferred, and was completely unaware that he was being transferred.

34.

The next day, Mr. Mathews asked Defendant Tyrney about the impending transfer. Defendant Tyrney confirmed that Mr. Mathews would be transferred in the next few days. Defendant Tyrney explained that the transfer was because Mr. Mathews (1) was not a "team player" and (2) should not have been a Lieutenant since he had never served as "case agent" for the department.

35.

Mr. Mathews told Defendant Tyrney that he believed he was being transferred because he objected to Defendant Tyrney's attempts to extort money from STPSO employees for Sheriff Strain's Campaign Gala – extortion that directly violated LA. R.S. 14:136, Public Salary Extortion.

36.

Mr. Mathews was not officially notified he was being transferred from the Narcotics Section until a few days after his meeting with Defendant Tyrney.  He was ordered to report to the Patrol Division the following week in June 2011.

37.

In Mr. Mathews' experience, transfers of similarly ranked employees in the STPSO took several weeks to go through all the necessary channels and become effective.  Accordingly, Mr. Mathews' quick transfer strongly suggests that it was set in motion shortly after his stand against Defendant Tyrney's attempt to solicit the campaign contribution from him.

38.

Defendant Major Joe Jarrell commanded the Patrol Division while Captain Magee was Mr. Mathews' new district captain.   Following his transfer, Mr. Mathews had initial consultations first with Captain Magee and next with Defendant Jarrell about the position.   Mr. Mathews informed both Defendants that he suspected he was transferred due to his objections regarding Sheriff Strain's Campaign Gala.   Neither Defendant made any response nor took any step to remedy the situation on Mr. Mathews' behalf.

39.

In September 2011, Mr. Mathews experienced health problems that required his gall bladder be removed.   He sought and received approval for FMLA leave so that he could have the necessary procedure.   Mr. Mathews' approved FMLA leave lasted approximately five weeks.

40.

Following his approved FMLA leave, on December 10, 2011, Mr. Mathews received his annual Performance Appraisal ("Appraisal"), which covered the period from October 2010 to October 2011.   Defendant Captain Richard Magee and Defendant Jarrell had signed the Appraisal.   The Appraisal assigned Mr. Mathews incompetent level scores in the teamwork and leadership categories.   The former category gave no explanation for the low score; the latter category notes that Mr. Mathews' approved FMLA leave and approved Annual Leave as having a "negative effect on the shift."   [*See* Performance Appraisal dated December 10, 2011, attached hereto as Exhibit 2.]   The Appraisal also inappropriately evaluated Mr. Mathews for an entire year although Defendants Jarrell and Magee had been Mr. Mathew's supervisors for only several weeks during the review period.

41.

Through his prior STPSO experience, Mr. Mathews witnessed employees fall out of favor with high ranking officers in the STPSO.  He also observed how these disfavored employees would subsequently have poor performance records systemically and artificially built against them to the point where resignations were coerced or the employees were terminated outright.

42.

Mr. Mathews' Appraisal – with its fabricated complaints and low performance scores – confirmed his suspicions that he was now one of those disfavored employee targets whose employment record would be systematically impugned until he was coerced into retirement or terminated with fabricated justification.

43.

A few days later, Mr. Mathews met with Defendant Magee and questioned him about the poor teamwork and leadership marks.  Defendant Magee told Mr. Mathews that he thought Mr. Mathews needed to be at work more and needed to be more professional.

44.

On or about December 23, 2011, Mr. Mathews reported the incident with Defendant Tyrney as well as Mr. Mathews' subsequent transfer and poor evaluation to both Human Resources and Internal Affairs.

45.

On December 28, 2011, Mr. Mathews met with Defendant Jarrell to discuss the Appraisal.  Defendant Jarrell claimed to be unaware that Mr. Mathews was out on approved FMLA and that said he would furnish a new Performance Appraisal.

46.

During that same December 28, 2011 meeting, Mr. Mathews notified Defendant Jarrell that he had reported the incident with Defendant Tyrney as well as Mr. Mathews' subsequent transfer and poor evaluation to both Human Resources and Internal Affairs.  Mr. Mathews further expressed his belief that the Campaign Gala ticket incident, Mr. Mathew's transfer, and his poor Appraisal were related events – events he believed, and continues to believe, illegally targeted him, violated his rights and were retaliation for his convictions.

47.

Having voiced his objections to the Appraisal, Mr. Mathews reluctantly signed it and turned it in to Human Resources.  He subsequently filed a formal report with Human Resources detailing his objections. [*See* Formal Report, dated December 23, 2011, attached hereto as Exhibit 3. A supplement to this initial statement requested by Internal Affairs is attached hereto as Exhibit 4].

48.

Minutes after the December 28, 2011 meeting with Defendant Jarrell, Mr. Mathews observed Defendant Jarrell meeting with Defendant Tyrney behind closed doors.  Mr. Mathews later discovered that Defendants Jarrell and Tyrney are close friends.

49.

On January 2, 2012, Mr. Mathews filed a supplemental complaint with Internal Affairs after his meeting with Defendant Jarrell regarding the discriminatory evaluation.  [*See* Supplemental Report attached hereto as Exhibit 5.]

50.

On January 11, 2012, the negative evaluation scores were retracted but no other corrective action was taken as to Mr. Mathews' employment or as to the chilling effect the appraisal would have had on other employees contemplating FMLA leave. [*See* Exhibit 6.]

51.

On January 12, 2012, Mr. Mathews received a $250 check issued from Defendant Strain's Campaign Fund apparently reimbursing him (without interest) for the check that he was compelled to make out to Defendant Tyrney. [*See* Campaign Fund Check # 2334, attached hereto as Exhibit 7]. Again, however, no corrective action was taken as to Mr. Mathews' employment or as to ensure further similar violations of state law would not be perpetrated against other STPSO employees in the future.

52.

On March 27, 2012, Mr. Mathews was directed to contact the Internal Affairs Division concerning a complaint. Upon doing so, he was told that two citizens alleged he used inappropriate language with them during a traffic stop.

53.

As a result, Mr. Mathews was then subjected to a recorded interview with Internal Affairs' Major Philip Casnave and Sergeant Wanda Jarvis regarding the alleged incident. Sergeant Jarvis informed Mr. Mathews that the investigation should be complete the following day, and that Mr. Mathews would receive a letter detailing the outcome.

54.

The investigation roused Mr. Mathews' suspicions. Standard procedure dictates that Internal Affairs becomes involved and investigates such minor complaints only when the officer

in question has a history of discourteous behavior towards the public.  Otherwise, as should have happened with these allegations, the district captain handles the complaint.

55.

When Mr. Mathews inquired why he, with an unblemished record, was being subjected to such formal investigations, the Internal Affairs officers agreed that they do not usually handle such complaints but that an undisclosed party directed Internal Affairs to investigate the complaint.

56.

Later that day, through a conversation with Defendant Jarrell and Captain Daniel Culpepper, Mr. Mathews learned that Defendant Jarrell had ordered Internal Affairs to handle the complaint.  Initially, Defendant Jarrell stated that he was unaware of Mr. Mathews' formal complaint with Human Resources and Internal Affairs that named him, despite the fact that Mr. Mathews had informed Defendant Jarrell of the formal complaint at the December 28, 2011 meeting.

57.

When Mr. Mathews pressed that there was no rational justification for subjecting Mr. Mathews to disparate treatment for such a minor offense, Defendant Jarrell later contradicted himself and stated that he thought it best to remove himself from the citizen complaint issue because of Mr. Mathews' grievance with him and so he directed it be given to Internal Affairs.

58.

The result of the Internal Affairs investigation was a finding that the complaint was unfounded. [*See* Exhibit 8].  The entire investigation, however, further exemplified that the

assassination of Mr. Mathews' career continued and he again raised this belief in a report to Human Resources. [*See* Exhibit 9].

59.

On April 23, 2012, Mr. Mathews injured himself on duty in an accident that severed his patella tendon.  He required extensive surgery and was unable to report to work for several weeks during his recovery.

60.

He applied for and received a FMLA leave.

61.

Mr. Mathews was put on light duty when he returned to work.

62.

On or about June 4, 2012, Mr. Mathews was informed that his position would no longer be secured unless he could return to full duty.

63.

Mr. Mathews was unable to return to full duty and the Defendants effectively terminated Mr. Mathews when his 90 day light duty period expired.

64.

Mr. Mathews' last day working for the Sheriff of St. Tammany Parish was October 30, 2012.

<strong><u>COUNT ONE: IMPROPER ACTS OF REPRISAL IN VIOLATION OF THE<br>LOUISIANA WHISTLEBLOWER STATUTE, LA. R.S. 23:967</u></strong>

65.

Mr. Mathews incorporates by reference all prior allegations herein.

66.

Mr. Mathews spoke out regarding Defendant Tyrney's public salary extortion – a violation of LA. R.S. 14:136 – that Defendant Tyrney committed when he demanded his subordinates purchase Sheriff Strain's Campaign Gala tickets and threatened to take away their overtime hours if they failed to do so.

67.

Mr. Mathews disclosed this violation of state law, and objected to and refused to participate in the illegal practice.  Specifically, he reported that:

1)   Defendant Tyrney solicited Sheriff Strain Campaign Fund donations from Mr. Mathews' and his subordinates;

2)   Defendant Tyrney's solicitation was that he expected Mr. Mathews and his subordinates to purchase $250 per plate Campaign Gala tickets with their own funds;

3)   Defendant Tyrney threatened to take away the Narcotics Section's overtime and resulting pay if Campaign Gala tickets were not purchased, thus impairing their employment; and

4)   The coercion finally caused Mr. Mathews to write a $250 check to Defendant Tyrney.

68.

Mr. Mathews soon began experiencing a hostile work environment and discriminatory employment acts subsequent to his objections to Defendant Tyrney's illegal attempts to extort money from Mr. Mathews and other STPSO employees.

69.

All of the adverse employment action detailed herein was the result of his speaking out and objections regarding the La. R.S. 14:136.

70.

Mr. Mathews avers that the following incidents took place in reprisal for his objections to Defendant Tyrney's extortion efforts:

A.   He was transferred from the Narcotics Section to the Patrol Division, which had the effect of a demotion;

B.   He lost his overtime hours, which amounted to a drastic reduction in pay;

C.   He was issued a negative and humiliating Performance Appraisal – his first ever in seventeen years in the STPSO—in blatant violation of the FMLA;

D.   He suffered and continues to suffer loss of professional reputation;

E.   He lost earnings potential including pension benefits;

F.   He was subjected to a non-routine Internal Affairs investigation of a minor citizen complaint;

G.   He was treated differently than similarly situated individuals as evidenced by the Internal Affairs interrogation;

H.   He was overall subjected to a generally tense and anxious atmosphere at work to the point of intolerableness; and

I.   His job ended in October when he could not return from light duty but he had already been constructively discharged.

71.

Mr. Mathews contends that the humiliating demotion, the extreme cut in pay, the tensions surrounding his objections to Defendant Tyrney's illegal public salary extortion, and his subsequent negative treatment by Defendants created an intolerable and hostile work

environment, such that he was exposed to adverse employment reprisals that continued through his discharge.

72.

As a consequence of the Defendants' wrongful and continuing acts, Mr. Mathews suffers and has suffered personal injuries both general and special that are compensable.  Additionally, under the Louisiana Whistleblower Statute, La. R.S. 23:967, due to the circumstances surrounding Mr. Mathews' retaliatory and reprisal constructive discharge, he is entitled to compensatory damages, back pay, benefits, reinstatement, reasonable attorneys' fees and court costs.

## COUNT TWO: CIVIL RIGHTS CLAIM

73.

Mr. Mathews incorporates by reference all prior allegations herein.

74.

This action is authorized by 42 U.S.C. § 1981 *et. seq.*, especially § 1983, to address the deprivation under color of state/federal law of rights guaranteed Mr. Mathews by the United States Constitution, namely the First Amendment.

75.

Plaintiff Mathews engaged in protected First Amendment activity through freely speaking his objections to misconduct of a police official.  Objections to police misconduct, as Mr. Mathews has made here, are matters of public concern.

76.

At all times aforementioned and pertinent hereto, the Defendants were acting under color of State Law as employees and/or agents of St. Tammany Parish and the St. Tammany Parish Sheriff's Office.

77.

Mr. Mathews contends that in addition to the above facts that he is being treated differently than others in his same situation, such that he is part of a protected class or a class-of-one-plaintiff.

78.

As described in this Complaint, Defendants retaliated against Mr. Mathews and committed ongoing discriminatory employments acts against him because he engaged in protected First Amendment activity.

79.

Due to the acts of retaliation in violation of the First Amendment, Defendants are liable to Plaintiff for back pay, front pay, mental anguish, interest, penalties, attorneys' fees and costs.

**COUNT THREE: FMLA RETALIATION**

80.

Mr. Mathews incorporates by reference all prior allegations herein.

81.

Mr. Mathews sought and was approved FMLA leave for gall bladder surgery.

82.

Mr. Mathews' FMLA leave lasted approximately five weeks.

83.

Subsequent to his approved FMLA leave, Defendants Jarrell and Magee authored and issued a negative annual Performance Appraisal – Mr. Mathews' first negative Appraisal during his seventeen-year-long history with the STPSO – that listed his FMLA leave as the reason for grades of incompetent in the teamwork and leadership categories.  Mr. Mathews was required to sign the Appraisal and return it to Human Resources so that it could be placed in his file.

84.

Under FMLA's anti-retaliatory provision, the negative Performance Appraisal constitutes a materially adverse action by Mr. Mathews' employer that is likely to dissuade a reasonable person in Mr. Mathew's position from exercising his legal rights.

85.

As a consequence of Defendants' acts, Mr. Mathews has suffered compensable personal injuries.  As a result, he is entitled to compensatory damages, back pay, front pay, liquidated damages, benefits, reinstatement, reasonable attorney fees, and court costs.

## COUNT FOUR: VIOLATIONS OF STATE LAW

86.

Based on the facts stated above, Defendants did knowingly and intentionally, or in the alternative negligently, violate Mr. Mathews' rights under the laws of the State of Louisiana, including but not limited to LSA-C.C. art. 2315 (liability for acts causing damages), LSA-C.C. art. 2316 (negligence, imprudence or want of skill), LSA-C.C. art. 2317 (acts of others), LSA-C.C. art. 2320 (acts of servants), and LSA-C.C. art. 2324 (solidary liability for conspiracy).

87.

At all times pertinent hereto, defendant Rodney Jack Strain was the Sheriff of the St. Tammany and is responsible for the actions and inactions of his subordinates as they relate to these violations against Mr. Mathews, in the following non-exhaustive particulars:

a.   Failure to properly hire, train, discipline and/or supervise the police officers under his command;

b.   Failure to adopt and enforce reasonably appropriate policies, practices, and procedures for the operation and administration of the internal affairs of the St. Tammany Sheriff's Office;

c.   Condoning a pattern, practice and/or custom of supervisor intimidation and abuse;

d.   Failure to adequately investigate and take appropriate disciplinary action for misconduct by members of the St. Tammany Sheriff's Office; and,

e.   Failing to maintain close supervision, monitoring, and accountability of high ranking members of the St. Tammany Sheriff's Office who have violated Louisiana and federal laws.

88.

At all times pertinent hereto, Defendants were acting within the course and scope of their employment with the St. Tammany Sheriff, thereby rendering the St. Tammany Sheriff liable for the acts of said defendants and/or vicarious liability for all causes and claims stated herein.

## III. PRAYER FOR RELIEF/DAMAGES

89.

As a consequence of all of intentional and/or negligent wrongful acts of the Defendants, Mr. Mathews suffered injuries that are compensable.  Additionally, due to the circumstances

surrounding the reprisal constructive firing of Mr. Mathews, he is also entitled to compensatory damages, liquidated damages, back pay, front pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from the reprisal.

90.

Plaintiff prays for a jury on all counts so triable.

WHEREFORE, Plaintiff, Clinton T. Mathews, prays his Complaint be deemed good and sufficient; and, after all legal delays and due proceedings are had, there be judgment rendered herein in favor of Plaintiff and against Defendants for compensatory general and special damages with legal interest from the date of judicial demand; and, for all other general and equitable relief and for such other relief as this Court may deem just and appropriate including, but not limited to, liquidated, punitive and exemplary damages against Defendants in an appropriate sum determined in this proceeding.

Plaintiff FURTHER prays for all costs and expenses incurred in this litigation, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 2617(a)(3) and LA. R.S. 23:967.

Plaintiff FURTHER prays for and demands trial by jury as to all issues allowed by law.


Respectfully submitted

/s/ Jonathan P. Lemann
_____
Jonathan P. Lemann (La. Bar #26380) T.A.
Couhig Partners, LLC
643 Magazine St., Suite 300
New Orleans, LA 70130
Ph: (504) 588- 1288
Email: lemannjp@couhigpartners.com

and

Richard R. Stedman, II (La. Bar #29435)
5209 Perrier Street
New Orleans, LA 70115
Ph: (504) 701-6345
Email: rstedman2@cox.net

***Attorneys for Clinton T. Mathews***

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CLINTON MATHEWS, | * | CIVIL ACTION NO. |
| | * | |
| VERSUS | * | |
| | * | SECTION |
| | * | |
| Sheriff Rodney J. Strain, Jr.; St. Tammany | * | |
| Parish Sheriff's Office; Captain Barney | * | |
| Tyrney; Captain Richard Magee; and | * | |
| Major Joseph Jarrell. | * | MAGISTRATE |
| | * | |
| * * * * * * | * | |

## **VERIFICATION**

STATE OF LOUISIANA
PARISH OF ORLEANS

BEFORE ME, the undersigned Notary Public, PERSONALLY CAME AND APPEARED:

CLINTON MATHEWS

Who after being duly sworn, did depose and state:

That he is the Plaintiff herein and that all of the allegations of fact contained in the Complaint and Jury Demand are true and correct to the best of his knowledge, information and belief.

SWORN TO AND SUBSCRIBED before me, on this ___4'TH__ day of December 2012.

_____
CLINTON MATHEWS

NOTARY 26 380